UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER M. PERKINS,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. EDCV 08-673 AGR<br><br><br><br>MEMORANDUM OPINION AND ORDER |

      Christopher Perkins filed this action on May 23, 2008.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on June 18 and September 25, 2008.  On March 5, 2009, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The Court has taken the matter under submission without oral argument.

      Having reviewed the entire file, the Court affirms the Commissioner's decision.

///

///

///

///

## I.

## PROCEDURAL BACKGROUND

On August 17, 2005, Perkins filed an application for Supplemental Security Income benefits alleging a disability onset date of December 28, 2001. A.R. 10. The application was denied initially and upon reconsideration. *Id.* An Administrative Law Judge ("ALJ") conducted a hearing on October 16, 2007, at which Perkins, his mother, a medical expert ("ME"), and a vocational expert ("VE") testified. A.R. 266-279. On January 16, 2008, the ALJ issued a decision denying benefits. A.R. 7-17. Perkins requested review. A.R. 6. On April 22, 2008, the Appeals Council denied Perkins' request for review. A.R. 3-5.

This lawsuit followed.

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

Perkins has the following severe impairments: "depressive disorder, NOS, and a history of polysubstance abuse, in early remission." A.R. 12. Perkins has the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: limitation to simple repetitive tasks with no hyper vigilance and occasional public contact." A.R. 13. Perkins is unable to perform his past relevant work as a barber. A.R. 15. Considering Perkins' age (27 at the time of the application), his education (at least a high school diploma), his work experience, and the RFC, jobs exist in significant numbers in the national economy that Perkins can perform, including building cleaner, hand packer, and grounds maintenance worker. A.R. 15-16.

### C. Dr. Gregg's Opinion

Dr. Gregg is a non-examining physician requested by the Agency to render medical advice based on records submitted to him.[1] A.R. 169; *see, e.g., Edel v. Astrue*, 2009 WL 890667, *9 (N.D.N.Y. 2009) (request for medical advice sent by state analyst to doctor who reviewed claimant's medical records).

---

[1] Perkins' contention that Gregg examined him is unsupported by the record. JS 3.

3

On December 16, 2005, Dr. Gregg completed a Request for Medical Advice, a Functional Capacity Assessment, and a Psychiatric Review Technique. A.R. 165-183.

Perkins argues that the ALJ rejected Dr. Gregg's limitations without providing specific and legitimate reasons. JS 3. In the Functional Capacity Assessment form, Dr. Gregg checked "moderately limited" for "ability to carry out detailed instructions." A.R. 165. Dr. Gregg also checked "moderately limited" for "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." A.R. 165-166.

The ALJ found that Perkins was limited to "simple repetitive tasks with no hyper vigilance and occasional public contact." A.R. 13. In assessing Perkins' residual functional capacity (RFC), the ALJ accepted the opinions of the examining physician (Dr. Rodriguez) and the Disability Determination Services (DDS) physicians, Dr. Gregg and Dr. Amado. A.R. 15.

Perkins does not identify any inconsistency between the ALJ's residual functional capacity assessment and Dr. Gregg's opinion. Dr. Gregg found Perkins capable of simple repetitive tasks. A.R. 165-67. Dr. Gregg indicated that Perkins is not significantly limited in his ability to carry out very short and simple instructions, and has moderate limitations in his ability to carry out detailed instructions.[2] A.R. 165. Dr. Gregg also indicated that Perkins is not significantly limited in his ability to maintain attention and concentration for extended periods;

---

[2] Based on the vocational expert's testimony, the ALJ found that Perkins could perform the representative jobs of hand packer and grounds maintenance worker, both of which require Level 1 reasoning. A.R. 16, 278-79; Dictionary of Occupational Titles 920.587-018 (hand packer), 405.687-014 (grounds maintenance worker). Level 1 reasoning "is the lowest rung on the development scale" and requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or two- step instructions" in "standardized situations with occasional or no variables." *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983-84 (C.D. Cal. 2005).

4

perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision and respond appropriately to changes in the work setting. A.R. 165-66. Perkins has moderate limitation in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. A.R. 166. A rating of moderately limited is not incompatible with the ability to work. *See* 20 C.F.R. § 416.920a(c)(4); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007) (moderate mental limitations did not preclude reliance on the grids without a vocational expert). The ALJ did not err.

Perkins also argues that the ALJ failed to address Dr. Gregg's diagnosis of ADHD. JS 3. Although Dr. Gregg noted that the consultative examiner (Dr. Rodriguez) diagnosed ADHD and included that diagnosis in his report, Dr. Gregg found the diagnosis "not convincing." A.R. 182. In any event, the ALJ noted that Perkins was treated for ADHD as a child. A.R. 15. The ALJ credited the opinions of physicians who diagnosed ADHD. A.R. 15, 163-64, 165-67, 173. Because the functional assessments in the record incorporated a diagnosis of ADHD, any error would be harmless. *See Bernal v. Astrue*, 2008 WL 4471172, *3 (C.D. Cal. 2008) (ALJ's failure to comment on diagnosis is harmless error if diagnosing doctor's other comments would not have resulted in a greater level of impairment).

**D.   ADHD - Development of the Record**

Perkins argues that the ALJ failed to adequately develop the record regarding the ADHD diagnosis. JS 6.

It is the claimant's duty to prove he is disabled. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). *See* 42 U.S.C. § 423(d)(5)(A) (the claimant must furnish medical and other evidence of her disability); 20 C.F.R. § 404.1512(c)

("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

"The ALJ . . . has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and internal quotation marks omitted). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60.

Here, the ALJ did not find that the record was ambiguous or inadequate. Nor did any physician render an opinion that the record was ambiguous or inadequate. The functional assessments of Perkins' mental limitations take into account a diagnosis of ADHD. A.R. 158-64 (Dr. Rodriguez), A.R. 165-84 (Dr. Gregg and Dr. Amado); *cf. Tonapetyan*, 242 F.3d at 1150 (duty to develop record existed when ALJ relied on physician who expressed that more medical evidence was needed to state a diagnostic opinion). Based on the record, the ALJ had no duty to develop the record further. *See Mayes*, 276 F.3d at 459-60.

### E.   Perkins' Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*, 504 F.3d at 1035-36.

#### 1.   Step One of the Credibility Analysis

At Step One, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.' 'Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no

showing that the impairment can reasonably produce the *degree* of symptom alleged.'" *Id.* (citations omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).  The ALJ found that Perkins' "medically determinable impairments could reasonably be expected to produce the alleged symptoms." A.R. 14.

### 2.     Step Two of the Credibility Analysis

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

The ALJ made no finding, nor was there any evidence of malingering.  "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn*, 495 F.3d at 635 (citations and quotation marks omitted).  "The ALJ must cite the reasons why the claimant's testimony is unpersuasive."  *Id.* (citation and quotation marks omitted).  In weighing credibility, the ALJ may consider factors including:  the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation."  *Bunnell*, 947 F.2d at 346 (en banc) (citing Social Security

Ruling 88-13,[3] internal quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in claimant's statements; (b) inconsistencies between claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Perkins argues that a report completed with his mother on September 4, 2005 indicates that he has "a lot of memory and concentration problems due to ADD." JS 10; A.R. 96, 98. Perkins contends that the ALJ failed to address this mental impairment. JS 10.

The ALJ found that Perkins' statements about the "intensity, persistence and limiting effects" of his symptoms were "not entirely credible" for two reasons: (1) Perkins' symptoms were "inconsistent with the treatment notes indicating improvement and stability with abstinence from heroin and treatment with psychotropic medication"; and (2) inconsistencies in Perkins' statements. A.R. 14.

Although not sufficient alone, inconsistency with the objective medical record is a factor that may be considered in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ's first reason is supported by substantial evidence. The ALJ accepted the opinion of Dr. Rodriguez. A.R. 15. Dr. Rodriguez stated that, as of November 30, 2005, Perkins had stopped using heroin for three months and was taking Methadone. A.R. 158; *see* A.R. 15. Dr. Rodriguez found Perkins to be coherent and organized, with speech at a normal rate and tone, and able to relax and smile. A.R. 161. Based on his examination, Dr. Rodriguez found Perkins able to understand, remember, and

---

[3] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

carry out simple one or two-step job instructions, and detailed and complex instructions. A.R. 164. Dr. Rodriguez found Perkins to be slightly limited in his ability to maintain regular attendance and perform work activities on a consistent basis, and moderately limited in concentration, attention, persistence and pace. A.R. 164. Dr. Rodriguez's prognosis was that Perkins' problems would resolve within 12 months if he continued abstinence from drugs and alcohol, uses his methadone, and gets properly evaluated for depression and ADHD. A.R. 163-64.

On December 12, 2006, Perkins was admitted to the Riverside County Regional Medical Center on a 5150 hold after abruptly stopping Methadone treatment.[4] A.R. 15, 187. As the ALJ noted, Perkins' symptoms resolved in two days with adjustment in his medication, and his GAF score rose from 25 at admission to 58 at discharge two days later.[5] A.R. 15, 187. Accordingly, the ALJ properly relied on inconsistencies between Perkins' statements and the medical records.

The ALJ's second reason is also supported by substantial evidence. *See Thomas*, 278 F.3d at 958-59 (ALJ may rely on ordinary credibility findings). Although Perkins' application for benefits alleged injuries from a December 2001 accident, Perkins did not allege a physical impairment at the hearing. A.R. 12. Perkins testified that he is "anxious and nervous around other people," but that his medications have helped with his temper. A.R. 14, 274.

Significantly, the ALJ incorporated Perkins' subjective complaints about his problems with concentration and interaction with others in the RFC assessment. The ALJ limited Perkins to "simple repetitive tasks with no hyper vigilance and

---

[4] A "5150 hold" refers to Cal. Welfare & Inst. Code § 5150, which permits a person to be placed in an approved mental health facility for 72 hours for "treatment and evaluation" if the person, because of a mental disorder, "is a danger to others, or to himself or herself, or gravely disabled."

[5] Perkins testified that he has been receiving medications and follow up mental health treatment once a month. A.R. 273.

occasional public contact." A.R. 13. Perkins does not identify any inconsistency between his testimony and the ALJ's RFC or, for that matter, the physician opinions acknowledging slight or moderate mental limitations. Accordingly, the ALJ did not err.

### F. Statements by Perkins' Mother

Perkins argues that his mother's statements were not properly considered by the ALJ. JS 13. Perkins specifically identifies his mother's statement that: "His ADD has been very frustrating to me his whole life. He was diagnosed as a teenager but had many problems prior to that. He has always had great difficulty concentrating, paying attention, and listening to teachers. Homework was like a battle every day. I have also been very frustrated by the fact that he does not think things through and acts very impulsively. It has gotten him in a lot of trouble and keeps him from progressing in life." JS 13; A.R. 90.

The ALJ rejected the mother's statements because "they generally represent reiteration of claimant's subject complaints that I find not fully credible." A.R. 14. As the ALJ noted, Perkins reported that he stopped using heroin in late 2005 and began taking Methadone. A.R. 15, 158. In December 2006, after a two-day hospitalization, Perkins' medications were adjusted and he began receiving follow-up mental health treatment. A.R. 15, 187, 273. Perkins does not identify any specific inconsistency between the mother's testimony and the ALJ's RFC assessment. Any error is harmless because "no reasonable ALJ, when fully crediting the [mother's testimony], could have reached a different disability determination." *Stout v. Commissioner,* 454 F.3d 1050, 1056 (9th Cir. 2006).

### G. Hypothetical to VE

Perkins argues that the ALJ failed to pose a hypothetical to the vocational expert (VE). JS 16.

The ALJ asked the ME his opinion on Perkins' work limitations. The ME replied: "I would limit him to simple repetitive tasks, no tasks requiring hyper vigilance, and only occasional contact with the public." A.R. 272. When the VE testified, the ALJ asked him if he had heard and understood "the limitations outlined by the medical expert." A.R. 278. The VE said yes. *Id.* The ALJ then asked the VE whether "a person with those limitations" could return to his past relevant work or was capable of other work. *Id.*

Contrary to Perkins' argument, an ALJ is not precluded from asking the VE to accept an ME's limitations. *See Thomas*, 278 F.3d at 955 (VE was present for the ME's testimony and was asked to accept the ME's work limitations).

The ALJ may rely on testimony a vocational expert gives in response to a hypothetical that contains "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005). The ALJ is not required to include limitations that are not in his findings. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). Because the ME's limitations contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record, the ALJ did not err.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the Commissioner's decision is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: July 8, 2009

*Alicia G. Rosenberg*
ALICIA G. ROSENBERG
United States Magistrate Judge